# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG ELECTRONICS CO., LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL RAMIREZ,<br><br>Defendant. | **CASE NO. 1:17-cv-01462-AWI-SAB**<br><br>**ORDER DENYING DEFENDANT'S MOTION STAY**<br>(Doc. 41)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL ARBITRATION**<br>(Doc. 35)<br><br>**ORDER CLOSING THE CASE** |

## I. Introduction

On August 4, 2017, Samsung Electronics America, Inc., ("SEA") and Samsung Electronics Co., Ltd., ("SEC") (collectively "Samsung" or "Plaintiffs") filed the instant action to compel Defendant Daniel Ramirez ("Ramirez" or "Defendant") to air his grievance regarding the alleged overheating of a Samsung Galax S7 Edge smartphone ("S7 Edge") in mandatory arbitration rather than in court. *See* Doc. 1. Now before the Court are Samsung's motion to compel arbitration, Doc. 35, and Defendant's motion to stay the action pending a parallel state court proceeding on the same subject, Doc. 41. Both motions are fully briefed.

For the following reasons, Defendant's motion to stay will be denied and Samsung's motion to compel arbitration will be denied.

1

**II. Background**

A. Alleged S7 Edge Defect

On March 11, 2016, Daniel Ramirez purchased a S7 Edge at a Best Buy store in California. Los Angeles Superior Court Complaint, Doc. 41-1 at 9.

On May 30, 2016, while in Akron Ohio for work, Ramirez placed the S7 Edge in his front right pants pocket. Doc. 41-1 at 9. "Shortly thereafter, Ramirez heard a whistling and screeching sound and noticed his pocket vibrating and moving around, as well as thick smoke ascending from his front right pocket. [¶] Ramirez reached into his right pants pocket to try to grab the S7 Edge and immediately felt his fingers burn from the searing heat. [¶] Suddenly and without warning, the S7 Edge's battery exploded, causing the S7 Edge cell phone to catch fire in Ramirez's pants. The S7 Edge then burned directly through Ramirez's boxer briefs and pants and engulfed his right leg in flames." *Id*. Ramirez suffered significant burns as a result. *Id.* at 10.

Plaintiff contends that the explosion and fire resulted from overheating of the electrolyte material found in the lithium-ion battery contained within the S7 Edge. Doc. 41-1 at 10.

B. Arbitration Agreement

The packaging of the S7 Edge indicated that it contained a product safety and warranty brochure and that the purchase of the phone was "subject to additional Samsung terms and conditions." Declaration of Joy McBeth, Doc. 35-2 ("McBeth Decl.") at ¶ 8; Doc. 35-3 at 2. Consumers were directed to "visit www.samsung.com" "for more information on [the] device." Doc. 35-3 at 2. The cover page of the product safety and warranty guide read "Product safety & warrant information." Doc. 36-4 at 2. The first page of the 23-page product safety and warranty guide contained in the packaging for the S7 Edge directs purchasers to "read this manual before operating your device," it indicates that the "document contains important terms and conditions with respect to your device," and that "[b]y using this device, you accept those terms and conditions. McBeth Decl. at ¶ 10; Doc. 35-4 at 2. The product safety and warranty guide also states that the S7 Edge "is covered under the applicable Samsung Limited Warranty **INCLUDING ITS DISPUTE RESOLUTION PROCEDURE**…." *Id*. at ¶ 12; Doc. 35-4 at 3 (upper case and bold in original).

Pages 19-21 of the warranty guide included in the S7 Edge box[1] detail the arbitration agreement. Doc. 34-4 at 27-29. The title for that section is "Procedures for Dispute Resolution / 30-day Arbitration and Opt-Out Policy." Doc. 34-4 at 27. That arbitration agreement reads, in relevant part:

> All disputes with Samsung arising in any way from this limited warranty or the sale, condition or performance of the products shall be resolved exclusively through final and binding arbitration…. The arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes…. This arbitration provision is entered into pursuant to the [FAA].

Doc. 35-4 at 27-28. The arbitration section makes clear that the customer has the option to opt out of the alternative dispute resolution process within thirty days of purchase. *Id*. at 29.

C. Litigation History

Ramirez sued Samsung in New Jersey state court after having been erroneously informed that SEA was incorporated in New Jersey. Doc. 41 at 3. Ramirez later learned that SEA was not incorporated in New Jersey and moved for voluntary dismissal of that action without prejudice on August 2, 2017. Doc. 41 at 3.[2] Ramirez informed Samsung that he would refile the action in California state court. *Id*.

After the filing of Ramirez's motion for voluntary dismissal in New Jersey state court, but before that motion was granted, Samsung filed suit against Ramirez in the United States District Court for the Northern District of Ohio on August 4, 2017, seeking declaratory relief and to compel arbitration pursuant to section 4 of the Federal Arbitration Act ("FAA"). On October 25, 2017, The Ohio District Court ordered the action transferred to this Court.[3] Doc. 19.

---

[1] A copy of a similar warranty guide containing the same alternative dispute resolution information was also available on Samsung's website. *See* McBeth Decl. at ¶ 23. The only difference between the arbitration agreement in the box and the arbitration agreement on Samsung's website was the formatting. *Id*.

[2] Samsung alleges that SEA has its principal place of business in New Jersey. Complaint, Doc. 1 ("Compl.") at ¶ 10.

[3] The Ohio District Court referenced both 28 U.S.C. § 1404 and 28 U.S.C. § 1406, and purported to transfer the action pursuant to both sections. Doc. 19 at 4. There can be little question that venue was proper in the Northern District of Ohio, where the injury took place, and that the action was therefore appropriately transferred pursuant to

3

On October 16, 2017, Ramirez filed with the California Superior Court, Count of Los Angeles, substantially the same personal injury and product liability action that he dismissed from the New Jersey state court. *See* Doc. 41-1. That action proceeds at the state court level and will necessarily involve questions of arbitrability.

### III. Motion to Stay

A. Legal Standard – The *Colorado River* Doctrine

The *Colorado River* doctrine deals with the problem posed by the contemporaneous exercise of concurrent jurisdiction by state and federal courts. *Smith v. Central Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1032 (9th Cir. 2005). In "exceedingly rare" circumstances, *Colorado River* recognizes a "narrow exception" to the federal courts' "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("*Colorado River*"); *Smith*, 418 F.3d at 1033. If "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," *Colorado River*, 424 U.S. at 817, show that the federal case should defer to the state case, then the federal court may dismiss or stay the federal action. *See R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011). In deciding whether to dismiss or stay a federal case in favor of a state case concerning the same subject matter, courts in the Ninth Circuit are to examine eight factors: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *Id*. at 978–79. With respect to the last factor, although "exact parallelism" is not required between the state and federal cases, "the existence of a substantial doubt as to

---

section 1404(a). *See* 28 U.S.C. § 1391(b)(2). Because Samsung's claims are all federal claims, the fact that venue was proper in Ohio does not change the law applicable in this action. Ninth Circuit authority applies to all of Samsung's claims. *Newtown v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994) ("[W]hen reviewing federal claims, a transferee court in this circuit is bound only by our circuit's precedent.")

4

whether the state proceedings will resolve the federal action precludes *Colorado River* stay or dismissal." *Id*. at 982; *Smith*, 418 F.3d at 1033.

"These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a mechanical checklist." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988). Yet, "[a]ny doubt as to whether a factor exists should be resolved against a stay." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

B. Analysis

*i. Assumption of Jurisdiction over Property and Inconvenience of the Federal Forum*

As a preliminary matter, Plaintiff contends that the first two considerations of the *Colorado River* inquiry are inapposite in this situation. "[A]s there is no specific piece of property over which any court assumed jurisdiction and there should be no assertion that the federal forum is inconvenient" because Samsung selected the federal forum. Defendant does not dispute Plaintiff's suggestion that the Court should not consider the first two factors. The Court agrees with Plaintiff's assessment as to the first consideration and disagrees as to the second consideration. As to the first consideration, since no piece of physical property is involved in this action it is irrelevant. *See R.R. Street & Co. Inc.*, *v. Transport Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011). As to the second consideration, the Court looks at the geographical location of the federal forum, not merely that a claim is being litigated in federal court. *See Id*. (The second consideration is irrelevant where "both the federal and state forums are located in [the same city.]") Plaintiff's suggestion that the federal forum is not inconvenient because Defendants elected to litigate in federal court is not responsive to that consideration and does not render it irrelevant. That in mind, Samsung voices no concerns of inconvenience of litigation in the state venue Los Angeles versus the federal venue of Fresno. This *Colorado River* factor is neutral.

*ii. Avoidance of Piecemeal Litigation*

Avoidance of piecemeal litigation was the Supreme Court's "chief concern" in *Colorado River*. *United States v. Morros*, 268 F.3d 695, 706 (9th Cir. 2001). "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly

5

reaching different results." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017); *Am. Int'l Underwriters*, 842 F.2d at 1258. Ramirez contends that allowing this action to proceed will result in the kind of piecemeal litigation that the *Colorado River* doctrine seeks to avoid. Ramirez's state court action involves additional parties "who will also presumably move to compel arbitration under the same arbitration agreement." Doc. 41 at 6. Plaintiff suggests that Samsung C&T America, Inc. ("Samsung C&T"), Samsung SDI America, Inc. ("SDIA"), Samsung SDI Co. Ltd., ("SDI"), will also seek to compel arbitration in the state court action. Samsung acknowledges that the factual issues before this Court significantly overlap with those before the state court. However, Samsung argues that (1) maintenance of this suit does not risk piecemeal litigation because "there [is] substantial doubt as to whether the state could issue the remedy to compel arbitration sought" from this Court, Doc. 44 at 11, and to the extent that any piecemeal litigation will take place, Ramirez is the cause because he initiated the state court action after Samsung initiated this action,[4] *id.* at 12.

The Court is unpersuaded by Samsung's reliance on *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 27 (1983) ("*Cone Mem'l Hosp.*"), for the proposition that California Courts cannot or will not compel arbitration pursuant to section 4 of the FAA if such an order is appropriate.[5] *Cone Mem'l Hosp.* does not stand for that proposition. Samsung presents no authority to suggest that California Courts would decline to stay an action or compel arbitration if such an order was required.[6] Indeed, United States Supreme Court authority and California caselaw stand for quite the opposite proposition. *E.g. DIRECTV, Inc. v. Imburgia*, --- U.S. ----, 136 S.Ct. 463, 471 (2015) (requiring a California Court of Appeal to enforce an

---

[4] Other factors in the *Colorado River* inquiry, such as the fourth consideration, are better suited to consideration of where the action was first filed and by whom.

[5] The Supreme Court's finding in *Cone Mem'l Hosp.* that Mercury might not have been able to obtain relief pursuant to the FAA under state law was premised upon North Carolina law that mistakenly suggested that the FAA did not apply to construction projects because they were not commerce. *Cone Mem'l Hosp.*, 460 U.S. at 26-27. By the time the Supreme Court ruled on *Cone Mem'l Hosp.*, the North Carolina Supreme Court had "repudiated" those erroneous decisions. *Id.* at 27 n.36.

[6] The Supreme Court has made clear that sections 1 and 2 of the FAA are "substantive provisions," applicable in both state and federal court. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 n.6 (1989). The Supreme Court has never held that sections 3 and 4, "which by their terms appear to apply only to proceedings in federal court," are nonetheless applicable in state court. *Id.*; *see also Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal.4th 1334, 1351 (2008) ("Sections 3 and 4 of the FAA … do not apply in state court.")

6

arbitration agreement pursuant to its terms as required by the substantive provisions of the FAA); *Saheli v. White Memorial Medical Center*, 21 Cal.App.5th 308 (Cal. Ct. App. 2018) (compelling arbitration required by an arbitration agreement pursuant to the FAA even though state law was inconsistent with section 2 of the FAA); *see Cable Connection Inc.*, 44 Cal.4th at 1352 (explaining that sections 3 and 4 of the FAA do not apply in state court but that state procedural rules for enforcing the arbitration agreements must advance the basic policy of upholding the enforceability of arbitration agreements). Although the mechanism for enforcement of arbitration agreements impacting interstate commerce may vary between federal and state courts, both courts must guarantee enforcement of such agreements by their terms. *Compare* 9 U.S.C. §§ 3, 4; *with* Cal. Code Civ. P. §§ 1281.2, 1281.4.

Samsung's position that state courts are not required to compel arbitration is further undercut by the fact that it appears that Samsung C&T intends to defend the state court action on the basis that Ramirez is required to arbitrate the matter. *See* Doc. 43-2 at 8-9.

If this Court rules on Samsung's motion to compel arbitration the state court will have no need to do so as to the SEA and SEC. Indeed, if the Court grants Samsung's section 4 petition, the claims against SEA and SEC will no longer be before the state court at all, thus rendering the possibility that the state court might issue a contrary ruling as to those parties impossible. In like fashion, even if this Court denies Samsung's motion to compel arbitration, that resolution will be result in a final judgment with respect to Samsung's section 4 petition and will be entitled to issue preclusive effect as to at least SEA and SEC. However, there is a non-negligible chance that this Court will rule on SEA and SEC's motion and the state court will be left to rule on motions to compel from Samsung C&T, SDIA, and SDI. In sum, the Court sees some risk of that kind of piecemeal litigation that the *Colorado River* doctrine seeks to avoid. This consideration weighs in favor of imposition of a stay.

*iii. The Order in which the Forums Obtained Jurisdiction*

While the action now pending before this Court was certainly filed before the state court action, Ramirez emphasizes that this action was filed after he gave notice that he would voluntarily dismiss his action in the New Jersey state court and refile in the California state

7

court. Doc. 41 at 6. Ramirez also asks the Court to deem the state court action first filed because this action is an anticipatory suit which should not be counted as the first-filed action. Doc. 41 at 6 (citing, *inter alia*, *Inherent.com v. Martindale-Hubbell*, 420 F.Supp.2d 1093, 1097-1098 (N.D. Cal. 2006) (explaining the first-to-file rule in the context of transfer or dismissal of a duplicate action)).

Ramirez's emphasis is misplaced. Plaintiff is correct insofar as inquiry into which forum obtained jurisdiction first "should not be measured exclusively by which complaint was filed first." *Cone Mem'l Hosp.*, 460 U.S. at 21. However, neither is the Court's focus upon whether the suit filed was anticipatory, but rather on "how much progress has been made in the two actions." *Id.*; *cf. R.R. St. & Co.*, 656 F.3d at 980 (finding that this factor weighed in favor of abstention because the state court had already made significant progress in the related action). Samsung is correct that the issue is fully briefed before this Court. The most recent by either party on the matter suggests that no motion to compel arbitration has been filed in the state court action by any defendant. Doc. 44 at 12. This consideration weighs against imposition of a stay.

*iv. Whether Federal Law or State Law Provides the Rule of Decision on the Merits*

Under Colorado River, we consider "whether federal law or state law provides the rule of decision on the merits" (the "rule of decision" factor). *R.R. St. & Co.*, 656 F.3d at 978. The "presence of federal-law issues must always be a major consideration weighing against surrender" of jurisdiction, but "the presence of state-law issues may weigh in favor of that surrender" only "in some rare circumstances." *Cone Mem'l Hosp.*., 460 U.S. at 26. That state law provides the rule of decision supports abstention only when the state law questions are themselves complex and difficult issues better resolved by a state court. *See R.R. St. & Co., 656 F.3d at 980–81* (concluding that the source of law factor is "neutral" where the complexity of the action "stems from the number of policies and insurers, not from the type of [state] law involved in the action"). Cases implicating only "routine issues of state law—misrepresentation, breach of fiduciary duty, and breach of contract—which the district court is fully capable of deciding" do not entail "rare circumstances" counseling in favor of abstention. *Travelers Indem. Co.*, 914 F.2d at 1370.

Again, the parties disagree. Ramirez contends that the court should find that state contract law is the rule of decision for enforceability of arbitration agreements; Samsung argues that the FAA provides the rule of decision. Each is partially correct. Whether the arbitration agreement is validly formed is certainly a question of state law. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal citation omitted) ("To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts.") However, the enforcement of such agreements is governed by the FAA: arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The state law issues in this action (and in the state law action) are not complex and do not rise to the level of a "rare circumstance" weighing in favor of abstention. *See Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 844 (9th Cir. 2017) (Where "the claims ultimately boil down to arguments about misrepresentation, fraudulent inducement, detrimental reliance, breach of contract, and rescission," those claims do not give rise to the kind of " 'rare circumstances' required for the rule of decision factor to weigh toward abstention.")

*v. Whether the State Court Proceedings Can Adequately Protect the Rights of the Federal Litigants and Whether the State Court Proceedings Will Resolve All Issues Before the Federal Court*

As to the "adequacy" factor, the Court must ask whether the state court might be unable to enforce federal rights. *Seneca Ins. Co.*, 862 F.3d at 845. As discussed above, the Court has little doubt that the state court would enforce the command of the substantive provisions of the FAA, albeit through deferent procedural mechanisms.

As to the "parallelism" factor, the Court asks whether there exists "a substantial doubt as to whether the state court proceedings will resolve the federal action." *R.R. St. & Co.*, 656 F.3d at 982. If so, the action cannot be stayed. *Id*. The Plaintiffs here, and additional Samsung entities, are defendants in the state court action. Although Samsung appears not yet to have moved to compel arbitration in the state court, there is no reason that it couldn't. If Samsung did so move

and the state court ruled on that motion, all of the issues before this Court would be resolved.[7] The Court has no doubt that, unless Samsung elects to waive enforcement of the arbitration clause, the state court action is sufficiently parallel to resolve the claims at issue in this action.

The Ninth Circuit has explained that the adequacy and parallelism factors are "more relevant when [they] counsel[] against arbitration, because while inadequacy of the state forum or insufficient parallelism may preclude abstention, the alternatives never compel arbitration." *Seneca Ins. Co.*, 862 F.3d at 845 (citing *Cone Mem'l Hosp.*, 460 U.S. at 25-26). "Parallelism is necessary but not sufficient to counsel in favor of abstention." *Id*. As was the case in *Seneca Ins. Co.*, "[b]oth the adequacy and parallelism factors here are neutral, as neither provides 'the clearest of justifications' warranting the surrender of federal jurisdiction." *Id*.

*vi. The Desire to Avoid Forum Shopping*

"When evaluating forum shopping under *Colorado River*, [courts] consider whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding." *Seneca Ins. Co.*, 862 F.3d at 846 (citation omitted). "It typically does not constitute forum shopping where a party 'acted within his rights in filing a suit in the forum of his choice' … even where '[t]he chronology of events suggests that both parties took a somewhat opportunistic approach to th[e] litigation.'" *Id.* (citations omitted).

Although Samsung appears to have opportunistically filed this action after Ramirez filed his notice of dismissal in New Jersey state court but before refiled the action in California state court, there is no question that it is permitted to bring a section 4 petition to compel arbitration. Moreover, insofar as any state-to-state forum shopping was intended, the granting of Ramirez's motion to transfer to this district cured any harm from that attempt. This factor does not weigh in favor of staying the action.

///

---

[7] Although Samsung seeks declaratory relief in this action, that relief comprises a necessary component of the section 4 petition to compel. In other words, the Court could not compel arbitration if it did not first conclude that the arbitration agreement was valid and the underlying claims at issue fell within the reach of the arbitration agreement.

*vii. Conclusion*

Despite the fact that resolution of this action may result in piecemeal litigation, the "exceedingly rare" circumstances necessary to permit the Court to sidestep its "virtually unflagging obligation ... to exercise the jurisdiction given" to it are absent. *Colorado River*, 424 U.S. at 817; *Smith*, 418 F.3d at 1033. Ramirez's motion to stay the action will be denied.

### IV. Motion to Compel Arbitration

A. Jurisdiction Over Samsung's Section 4 Petition

The FAA permits parties to file petitions to compel arbitration separate from (and without the need for) an ongoing court action between the parties. 9 U.S.C. § 4. However, the FAA does not independently create subject matter jurisdiction and, absent a federal question or diversity jurisdiction. *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 (9th Cir.2004) (citing *Cone Mem'l Hosp.*, 460 U.S. at 15 n. 32; *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1287–88 (9th Cir. 1984). Without subject matter jurisdiction over the controversy, a court cannot consider a petition to compel arbitration. 9 U.S.C. § 4; *Vaden v. Discover Bank*, 556 U.S. 49, 62–63 (2009). The court should "determine its jurisdiction by 'looking through' a [section] 4 petition to the parties' underlying substantive controversy." *Id.* at 62.

Here, Samsung asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity of citizenship and an amount in controversy exceeding $75,000.00. 28 U.S.C. § 1332. Generally, the amount in controversy claimed by a plaintiff in good faith will be determinative of the jurisdictional amount, unless it appears to a legal certainty that the claim is for less than $75,000.00. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–289 (1938). When a petition to compel arbitration is involved, "the amount at stake in the underlying litigation ... is the amount in controversy for purposes of diversity jurisdiction." *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 661-662 (9th Cir. 2005). Ramirez suffered significant second and third degree burns on his right hand and right leg for which he received inpatient and outpatient treatment. The amount in controversy with respect to those damages alone likely exceeds $75,000.00

Next, the court next evaluates whether there is complete diversity of citizenship between

the parties. Ramirez and Samsung are completely diverse—SEA is a New York corporation with a principle place of business in New Jersey; SEC is a foreign corporation; Ramirez is a California domiciliary. However, at least one of the defendants in Ramirez's state court action, Samsung C&T America, Inc., is a California citizen. See Doc. 41-1 at 7. The "look through" requirement for determining subject matter jurisdiction over a section 4 petition does not extend to considering the parties in the underlying state court action. *CarMax Auto Superstores California LLC v. Hernandez*, 94 F.Supp.3d 1078, 1096 (C.D. Cal. 2015) (citation omitted); *see Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002) (In affirming a section 4 petition for arbitration, the court explained that "the citizenship of someone not before the court is irrelevant to the jurisdictional inquiry.") Here, the parties are diverse.

B. Legal Standard

In enacting the FAA, Congress "declared a national policy favoring arbitration" that was intended to reverse centuries of judicial hostility to arbitration agreements. Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). The FAA commands that district courts "shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis). Thus, arbitration agreements "must be enforced, absent a ground for revocation of the contractual agreement." *Id*. A court's role is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp*., 533 F.3d 1114, 1119 (9th Cir. 2008) (citing *Chiron Corp. v. Ortho Diagnostic Sys*., 207 F.3d 1126, 1130 (9th Cir. 2000)).

C. Discussion

The parties have agreed that California law is applicable. *See* Docs. 36 at 11, 39 at 6. Under California law, "the essential elements for a contract are (1) '[p]arties capable of contracting;' (2) '[t]heir consent;' (3) '[a] lawful object;' and (4) '[s]ufficient cause or consideration.'" *Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (quoting, *inter alia*, Cal. Civ. Code § 1550). Ramirez's argument challenges only the existence of the second element. He argues that the notice of additional terms and conditions

attendant to the purchase of his Galaxy S7 Edge—to wit, existence of the arbitration clause—was inadequate and he therefore could not have knowingly consented. Even if notice given was adequate, Ramirez argues, that he could not have given consent by inaction or silence. Ramirez does not dispute that if the arbitration clause is enforceable that his claims fall within the scope of the agreement. The Court only addresses the question of notice.

   *1. In re Samsung Galaxy Smartphone Marketing and Sales Practices Litigation*

The precise question of whether the packaging of, and inserts to, the Samsung Galaxy S7 Edge, sold for use on the Verizon network (as well as other networks), were sufficient to give notice of the arbitration agreement and opportunity to consent was recently addressed by a district court in this Circuit. *See In re Samsung Galaxy Smartphone Marketing and Sales Practices Litig.*, --- F.Supp.3d ----, 2018 WL 1569747 (N.D. Cal. Mar. 30, 2018) ("*In re Samsung Galaxy*"). The parties agree that this action turns on the same issue of notice at issue in *In re Samsung Galaxy.* Docs. 48, 49. However, the parties disagree regarding which portion of the decision is applicable to this factual situation. *See Id*.

*In re Samsung Galaxy* involved multiple Samsung Galaxy devices packaged in boxes with guidebooks that varied in meaningful fashion in both structure and content of notice. *In re Samsung Galaxy*, 2018 WL 1569747 at *7-9. All of the Samsung Galaxy S7 and S7 Edge boxes alerted customers that there were additional terms and conditions. *Id*. at *6. Although the language on the boxes varied, they all shared common phrases. For instance, at least two boxes (sold for use on the Verizon and AT&T networks) indicated: "Device purchase subject to additional Samsung terms and conditions." *Id* at *6, 9; *see In re Samsung Galaxy*, 5:16-cv-06391-BLF, Docs. 68-3, 68-1, 68-5. Elsewhere on those two boxes consumers were also instructed: "For more information on your device, please visit www.samsung.com." *Id*. At least one other box (sold for use on the T-Mobile network) emphasized the existence of the arbitration agreement by instructing consumers to "'[s]ee brochures and **Terms and Conditions (including arbitration provision)** at T-Mobile.com." *Id*. (emphasis in original) at 6; *see In re Samsung Galaxy*, 5:16-cv-06391-BLF, Doc. 68-2. A third set of boxes (sold for use on the Sprint network) advised consumers: "Device purchase subject to additional Samsung terms and conditions. For

13

more information on your device, please visit www.samsung.com." *In re Samsung Galaxy*, 2018 WL 1569747 at *9; *In re Samsung Galaxy*, 5:16-cv-06391-BLF, Doc. 68-1.

Within each of the boxes was a guidebook. *Id.* The guidebooks also varied in title and in content. The court found that a first set of guidebooks—titled either "Health & Safety and Warranty Guide" or "Product Safety and Warranty Information"—bore "the following language in bold on the front[8]: "**Please read this manual before operating your device and keep it for future reference. This document contains important terms and conditions with respect to your device. By using this device, you accept those terms and conditions.**" *Id.* (emphasis in original). An index in that first guidebook then directed consumers to the arbitration agreement which appears in a capitalized font and reads as follows: "ALL DISPUTES WITH SAMSUNG ARISING IN ANY WAY FROM THIS LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCTS SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY." *Id*. at *8. "[A] couple pages later, the guidebook repeats and elaborates on the opt-out procedures," requiring only an email bearing the subject line "Arbitration Opt Out" to a specified address or a call to Samsung at a number listed within 30 days of purchase. *Id*. That opt-out procedure explanation made clear that opting out of the arbitration agreement had no impact the benefits of the limited warranty.

A second set of guidebooks—included with the Galaxy S7 sold for use on the Sprint network—did not inform the consumer "that the terms and conditions were contained therein." *In re Samsung Galaxy*, 2018 WL 1569747 at *9; *see id.*, 5:16-cv-06391-BLF, Doc. 68-6 at 2. "Instead, [the] guidebook … was titled 'Important Information' and had page numbers for a 'Health and Safety Information' section and a 'Warranty Legal Information' section." *Id.*; *see In*

---

[8] As discussed in more depth below, the determination that the guidebook contained the quoted language on the front was factually false. A review of the docket in that matter makes clear that the guidebooks in the boxes at issue had a cover page before the title page. *In re Samsung Galaxy*, 5:16-cv-06391, Doc. 68 at ¶ 16 ("The hard copy version of the guidebooks for T-Mobile, AT&T, and Verizon contained an additional cover page before the title page on the electronic versions.") It appears that no evidence of what that cover page contained was submitted to the Court but it does not appear to have been a duplicate of the first page. The language identified by the *In re Samsung Galaxy* court did not actually appear on the front of the guidebook. Here, Ramirez submitted the cover page of the hard copy of the guidebook. That cover page reads, "Product safety & warranty information. Samsung Galaxy S7 edge". Doc. 36-4 at 2. The quoted language appears on the first page (inside of the cover).

14

*re Samsung Galaxy*, Case No. 5:16-cv-06391-BLF, Doc. 68-6 at 2 (N.D. Cal. Sept. 26, 2017) (Sprint Guidebook).

The *In re Samsung Galaxy* court drew differentiated between two groups: (1) those who received (a) a box (i) indicting that additional "terms and conditions" were contained in the box or (ii) indicating merely that the "device purchase [was] subject to additional Samsung terms and conditions," and (b) a guidebook with a cover[9] bearing bold language on the front indicating that it contained terms and conditions, the arbitration clause was clearly set out, and language making clear that use of the phone constituted acceptance of the terms and conditions contained in the guidebook; and (2) those who received (a) a box indicating the device purchase was subject to "additional Samsung terms and conditions," that also suggested that those terms could be found on www.samsung.com, and (b) a guidebook was labeled "Important Information," that lacked a clear indication that it contained more than warranty and health and safety information. *See In re Samsung Galaxy*, 2018 WL 1569747 at *7-9.

As to the former category, the *In re Samsung Galaxy* court found that the consumers were directed to the "terms and conditions" referenced outside of the box because "their location is prominently displayed on the front of the guidebook in the box." *See In re Samsung Galaxy*, 2018 WL 1569747 at *6. The *In re Samsung Galaxy* court also emphasized that the face of the guidebook made clear that use of the device would bind the consumer to the agreement. Based, at least in part, upon those findings, the court compelled arbitration on overheating and explosion-related claims. *Id.* at 8. In fact, the *In re Samsung Galaxy* court expressly differentiated from the brochures in before the Ninth Circuit in *Norcia*: "this setup is more likely to notify consumers than *Norcia's* 'Product Safety & Warrant Information' brochure…. Here, Plaintiffs have a much weaker argument that Samsung's arbitration provision is 'contained in a document whose contractual nature is not obvious.'" *Id* at *6 (quoting *Norcia*, 845 F.3d at 1285).

As to the latter category, the *In re Samsung Galaxy* court, relying largely on *Norcia v. Samsung Telecommunications America, LLC*, found that the box was likely to push a consumer to consult the website because (i) of the proximity of the language regarding additional terms and

---

[9] Again, that conclusion appears to be factually incorrect.

15

conditions and the direction to visit www.samsung.com for more information, and (ii) the guidebook lacked any clear indication that it contained the relevant terms and conditions. *Id.* at *9. In turn, the website "would not put a reasonable person on notice that he binds himself to arbitration by using his phone…. [T]he website nowhere provides that use of the phone constitutes acceptance of the terms." *Id.* Further, even if a consumer consulted the guidebook, it was "ineffective to put a reasonable person 'on notice that the brochure contain[ed] a freestanding obligation outside the scope of the warranty'" because the arbitration provision was discussed in "the context of Samsung's warranty" and appears in a section called "Standard Limited Warranty Information." *Id*. On those bases, the court declined to compel arbitration in the latter situation.

   2. *Application of In Re Samsung Galaxy to this action*.

Samsung contends that the fact pattern of this case is "identical to" the former situation. Doc. 48 at 2. Ramirez contends that the facts of this case are "strikingly similar" to the facts of the latter situation. Doc. 49 at 3.

Ramirez directs the Court to the similarities between the box in this case (for the Galaxy S7 Edge on the Verizon network) and the box in the latter situation in *In re Samsung Galaxy* (for the Samsung S7 on the Sprint network). Ramirez is partially correct; both contain similar language and make clear that the phone purchase is "subject to additional Samsung terms and conditions." Doc. 35-3 at 2; *In re Samsung Galaxy*, 5:16-cv-06391-BLF, Doc. 68-1 at 2. However, *all* of the S7 and S7 Edge boxes in *In re Samsung Galaxy* contained that language and it was not a distinguishing line for the court. *In re Samsung Galaxy*, 2018 WL 1569747 at *6 ("The exterior of every S7 and S7 Edge box alerts the customer that there are additional terms and conditions.") More significantly, the language on the box for the Galaxy S7 Edge for use on the Verizon network in this case is *identical* in content to the Galaxy S7 Edge box for use on the Verizon network grouped into the former category in *In re Samsung Galaxy* (where the court compelled arbitration). *Compare* Doc. 35-3 (Verizon Samsung S7 Edge box) *with In re Samsung Galaxy*, 5:16-cv-06391-BLF (same except coloration). Neither of those identical boxes immediately suggests visiting www.samsung.com after explaining that additional terms and

16

conditions apply—i.e., the language does not direct consumers to the website to find terms and conditions. Accordingly, the language appearing on the box in this action does not fail for the same reasons as the latter situation (involving the box for the Galaxy S7 for use on the Sprint network) in *In re Samsung Galaxy*.

Ramirez also suggests that the guidebook in his case is like the latter situation (involving the guidebook for the Galaxy S7 for use on the Sprint network) in *In re Samsung Galaxy*. The guidebooks share some similarities but not the relevant similarities. Again, a review of the Verizon model guidebook at issue in this action compared to the Verizon model guidebook in the former situation in *In re Samsung Galaxy* reveals that they are also *identical*. *Compare* Doc. 35-4 (Verizon Samsung S7 Edge guidebook produced on January 29, 2016) *with In re Samsung Galaxy*, 5:16-cv-06391-BLF, Doc. 68-10 (same).

With respect to exactly the same guidebook and exactly the same box sleeve, the *In re Samsung Galaxy* court found that the consumers had notice of the arbitration agreement and agreed to its terms by use of the device. *In re Samsung Galaxy*, 2018 WL 1569747, *7-8. Accordingly it enforced the arbitration agreement.

The Court has fully reviewed *In re Samsung Galaxy* but cannot agree with its reasoning as it relates to this case.[10] The *In re Samsung Galaxy* court appears to have relied on a false factual premise. The court found that the Verizon guidebook indicated "in bold on the front" that it contained "important terms and conditions…." *In re Samsung Galaxy*, 2018 WL 1569747 at *6. The Court emphasized that, even for those boxes that do not indicate where to find terms and conditions, the location of those terms and conditions is apparent because "their location is prominently displayed on the front of the guidebook in the box." *Id*. at *6. Problematically, the guidebook accompanying the Galaxy S7 Edge for use on the Verizon network submitted in *In re Samsung Galaxy* and in this case has a cover page that does not contain any of the above-quoted

---

[10] The *In re Samsung Galaxy* court found that the notice of the arbitration agreement found on the packaging and guidebook for the Galaxy S7 device for use on the Sprint network (the latter situation) was inadequate—thus no arbitration agreement was formed. *In re Samsung Galaxy*, 2018 WL 1569747 at * 9; *see Velasquez–Reyes v. Samsung Elecs. Am., Inc.*, 2017 WL 4082419, *7 (C.D. Cal. Sept. 13, 2017) (same except the box cover made reference to an arbitration agreement). At least one Court in this Circuit has disagreed on that question as to virtually the same language. *Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035, *4 (W.D. Wash. May 25, 2017) ("A 'reasonable person' was on notice of the arbitration agreement, and thus Plaintiffs assented under California law.")

17

language. *In re Samsung Galaxy*, 5:16-cv-06391-BLF, Doc. 68 at ¶ 19 ("The hard copy version of the guidebooks for T-Mobile, AT&T, and Verizon contained an additional cover page before the title page on the electronic versions."); Doc. 35-2 at ¶ 10 ("The hard copy version of the [Verizon] Warranty Guide contained an additional cover page before the title page on the electronic version."); Doc. 36 at 16; Doc. 36-4 at 2. Instead, a consumer would need to look inside the guidebook entitled "Product safety & warrant information." Doc. 36-4 at 2. That language would not tell a reasonable consumer that it contains the "Terms and Conditions" listed on the outside of the box.[11] *Velasquez-Reyez*, 2017 WL 4082419, *2, 6-7 (relying on *Norcia*). Indeed, the *In re Samsung Galaxy* court so held with respect to the latter scenario (the Galaxy S7 for use on the Sprint network) where the guidebook cover read "Important Information" and did not indicate that it contained the additional terms and conditions. *In re Samsung Galaxy*, 2018 WL 1569747 at * 9. Even more problematic for Samsung, the language found on the cover of the guidebook is identical to the language in *Norcia*, where the court explained that "a brochure entitled 'Product Safety & Warranty Information' … indicates that it contains safety information and the seller's warranty…." *Norcia*, 845 F.3d at 1289; *see Dang v. Samsung Electronics Co., Ltd.*, 673 Fed.Appx. 779 (9th Cir. 2017) ("Important Information for the Samsung [device]"). From that language "[a] reasonable person would not be on notice that the brochure contained a freestanding obligation outside the scope of the warranty." *Id*. "Nor would a reasonable person understand that receiving the seller's warranty and failing to opt out of an arbitration provision contained within the warranty constituted assent to a provision requiring arbitration of all claims against the seller, including claims not involving the warranty." *Id*. On that basis, the Ninth Circuit found that a consumer was not on notice of the contractual nature of the arbitration provision within the guidebook. The facts of this case give no basis for departure from *Norcia*. The arbitration agreement is not enforceable.

///

---

[11] At least one additional reason exists to believe that a consumer might not look inside the "Product safety & warranty guide" for terms and conditions. The box exterior makes clear that additional terms and conditions apply *and* gives a list of all items contained in the box. The additional terms and condition separately mentioned on the box is not among them.

**V. Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Ramirez's motion to stay is DENIED;
2. Samsung's motion to compel arbitration is DENIED.

This order resolves all claims at issue in this action. The Clerk of the Court is respectfully directed to enter judgment in favor of Ramirez and close this case.

IT IS SO ORDERED.

Dated:   May 10, 2018

_____
SENIOR DISTRICT JUDGE